UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHMUEL BARON,<br><br>Plaintiff,<br><br>-versus-<br><br>DELTA AIR LINES, INC.,<br><br>Defendant. | **REPORT AND RECOMMENDATION**<br><br>24-CV-8664 (NCM) (CHK) |

**CLAY H. KAMINSKY, United States Magistrate Judge:**

Defendant Delta Air Lines, Inc. ("Delta") moves to enforce an informal settlement agreement that it reached with plaintiff Shmuel Baron's counsel. ECF No. 34. Baron, now proceeding *pro se* after dismissing the attorney he claims did not have his permission to settle his case, opposes Delta's Motion. The Honorable Natasha C. Merle has referred the Motion to me for a Report and Recommendation. For the reasons that follow, I recommend that the Motion be denied.

## BACKGROUND

Baron commenced this action in December 2024, alleging that he was the target of an antisemitic incident on board a Delta-operated flight from New York City to Tel Aviv, Israel in June 2023 and that defendant failed to adequately provide protection or address the incident post hoc. *See generally* Compl., ECF No. 1. Initially proceeding *pro se*, Baron alleged that he and a group of "visibly identifiable" Jewish passengers on the flight were "physically and verbally assaulted" by an unidentified

female passenger while engaged in silent prayer, that the assault "included shoving, elbowing, and verbal[] harass[ment]," and that he immediately reported the incident to the Delta flight crew. *Id.* ¶¶ 1–4. He further alleged that, despite his report, Delta neither notified local law enforcement in Tel Aviv upon landing nor engaged with his attempts to gather information and seek redress following the incident. *Id.* ¶¶ 5–6. Baron sued Delta for negligent breach of its heightened duty of care as a common carrier under 49 U.S.C. § 44701, for violating his civil rights under 42 U.S.C. § 1981, and for emotional distress for Delta's failure to report "in-flight criminal activity" pursuant to federal law, seeking, *inter alia*, compensatory damages in excess of $75,000, punitive damages, and a court order compelling Delta to disclose the identity of the aggressor in the relevant incident. *Id.* ¶¶ 8–11.

Attorney Vivian Sobers appeared on behalf of Baron in March 2025. ECF No. 10. Discovery proceeded for several months with this representation arrangement, the parties reporting productive informal settlement discussions in their status reports. ECF Nos. 25, 27, 28.

On September 15, 2025, in advance of a discovery conference scheduled for the next day, Delta's attorney, Allison Surcouf, sent an email to Sobers, stating: "Delta agrees to settle this case for [a stated payment amount] against a General Release. Please confirm ASAP, and we will notify the Court so that tomorrow's conference is cancelled." ECF No. 34-3.[1] Sobers replied early the next morning: "Confirmed, we[']re

[1] In support of Delta's motion to enforce settlement, Surcouf submitted a declaration (ECF No 34-2) attaching two email chains between counsel (ECF Nos. 34-3 & 34-4) and the proposed general release (ECF No. 34-5). Delta has also submitted a Memorandum of Law ("Def. Mem.") (ECF No.

settled, please send the paperwork." *Id.* Defense counsel thereafter submitted a motion on behalf of both parties requesting to adjourn the conference because, she wrote, "the parties have reached a settlement in principle." ECF No. 30. The Court granted the motion, adjourned all hearings and deadlines, and directed the parties to file a stipulation of dismissal or joint status report by October 20, 2025. 09/16/2025 Order. Less than a week later, defense counsel sent Sobers, by email, "a general release for your client's execution, as well as a stipulation of dismissal" and a Medicare eligibility form. ECF No. 34-4 at 11; *see also* ECF No. 34-5 (proposed general release).

Baron did not execute the general release or the stipulation of dismissal. *See* ECF No. 31 (Oct. 20, 2026 letter requesting an extension of time because "Plaintiff has not executed the General Release"). He insists in his opposition to the present Motion that that is because he never approved the settlement. Baron asserts that when Sobers conveyed Delta's settlement offer to him, he did not accept the offer but rather asked his counsel for more time to consider it. Plaintiff's Memorandum of Law in Opposition to Defendant's Mot. to Enforce ("Pl. Opp'n"), ECF No. 36, at 4.[2] He

34-1), and a Reply memorandum ("Def. Reply") (ECF 37). Delta's motion redacts the proposed settlement payment amount; Baron's opposition states that it was $3,000.

[2] Baron's opposition memorandum cites its assertions of fact to "the Declaration of Shmuel Baron, sworn under penalty of perjury pursuant to 28 U.S.C. § 1746." Pl. Opp'n at 4. This declaration has not been filed with the Court. The Court, in its discretion and as permitted by Local Civil Rule 1.9, will consider the factual assertions in Baron's signed opposition memorandum. *See, e.g.*, *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 530 (S.D.N.Y. 2015) (considering unsworn assertion in *pro se* Plaintiff's memorandum of law "because it is based on Plaintiff's personal knowledge, and in light of the special solicitude due to pro se parties in opposing summary judgment. "); *Bullion Shark, LLC v. Flip a Coin LLC*, 2:23-cv-6529, 2024 WL 87763, at *2 (E.D.N.Y. Jan. 5, 2024) ("[C]ourts in this circuit routinely consider [unsworn] statements . . .where the proponent of the statements is a *pro se* litigant, mindful of the duty to extend special solicitude to those individuals.").

asserts that he never gave his attorney authorization or authority to settle his case. *Id.* He further asserts that "[w]hen Baron learned what Sobers had done, he acted immediately: he objected, and he terminated her." *Id.* at 5.

Sobers wrote to the Court on October 31, 2025, that Baron "is seeking other counsel and does not want to proceed with settlement." ECF No. 32. The Court held a telephone conference with counselors Sobers and Surcouf—as well as Baron himself—on January 7, 2026. During that conference the Court granted Sobers' application to withdraw as counsel for Baron and defendant stated that it intended to bring a motion to enforce the terms of the settlement agreement. 01/07/2026 Minute Entry. This Motion followed.

## DISCUSSION

Defendant argues the attorney Sobers' acceptance of Delta's proposal to settle the case for a stated amount against a general release is an enforceable contract notwithstanding the lack of a signed writing. Baron argues that the purported settlement agreement cannot be enforced because he never accepted Delta's settlement offer or authorized his attorney to do so. For the reasons explained below, I find that Baron has the better of the argument and recommended that Delta's motion be denied.

### 1. The Attorney's Authority to Bind Client to Settlement

Because the decision to settle a case belongs to the client, not the attorney, a client cannot be bound to a settlement made by counsel unless counsel had actual or apparent authority to settle the case. *Fennell v. TLB Kent Co.*, 865 F.2d 498, 501 (2d

Cir. 1989). "A client does not create apparent authority for his attorney to settle a case merely by retaining the attorney," *id.* at 502, but because of the unique nature of the attorney-client relationship, courts "presume that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so." *In re Artha Mgmt., Inc.*, 91 F.3d 326, 329 (2d Cir. 1996). The party challenging the attorney's authority bears the burden of proving that the attorney lacked authority. *Id.* That burden is "not insubstantial." *United States v. Int'l Bhd. of Teamsters*, 986 F.2d 15, 20 (2d Cir. 1993). It will not be met when the client fails to deny giving the attorney such authority. *See In re Artha Mgmt., Inc.*, 91 F.3d at 329; *Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 248 (E.D.N.Y. 2002). Similarly, a client's delay in objecting to a settlement agreement made by counsel weighs against a finding that the attorney lacked settlement authority. *See Int'l Bhd. of Teamsters*, 986 F.2d at 20–21; *United States v. Manning*, 107 F.3d 5, 1997 WL 62973, at *1 (2d Cir. Feb. 12, 1997).

I find that Baron has carried his burden of demonstrating that Sobers lacked authority to settle his case. While Delta casts this as a case of "buyer's remorse," Def. Mem. at 1, Baron denies that he ever gave Sobers authority to settle his case. He made no manifestations to Delta's counsel that would support a finding of apparent authority. He timely objected by declining to sign the proposed general release and ultimately terminating Sobers' engagement. Pl. Opp'n at 4–5.

The facts of this case are analogous to *Fennell*, upon which Baron relies. In that case, plaintiff Fennell's attorney had negotiated a sum certain settlement

without Fennell's approval (but in the absence of express limitations from Fennell) and reported it to the court. *Fennell*, 865 F.2d at 500–02. Fennell terminated his counsel and notified the district court that he objected to the settlement because he was not satisfied with the settlement amount. The district court held that the attorney had apparent authority to settle the case, approved the settlement over Fennell's objections, and dismissed the action. On appeal, the Second Circuit reversed, holding that because Fennell had "made no manifestations to defendants' counsel that [his attorney was] authorized to settle the case," his attorneys had no apparent authority to settle the case on those terms without his consent. *Id.* at 502. It was immaterial "that Fennell knew settlement was being discussed, did not ask his attorneys not to discuss settlement, would have accepted a higher settlement figure, and did not tell defendant's counsel that the authority of plaintiff's counsel was limited in any way." *Id.*

Delta's reliance on *Conway* is misplaced. *See* Def. Reply at 3–4. There it was "clear" that the attorney had apparent authority, "as he stated such in Conway's presence in open court at the settlement conference" and "Conway did not deny that she gave her attorney authority to settle." *Conway*, 236 F. Supp. 2d at 248. In fact, Conway "never, to this day, contested the fact that her attorney had authority to enter into the settlement on her behalf." *Id.* Here, by contrast, there was no such representation in Baron's presence, and Baron emphatically denies that he gave his attorney authority to settle.

I also reject Delta's half-hearted alternative argument that Baron ratified Sobers' agreement. *See* Def. Reply at 6. The cases that Delta cites, *Conway* and *Willgerodt v. Hori*, 953 F. Supp. 557 (S.D.N.Y. 1997), do not stand for the propositions for which they are cited, and Baron's refusal to sign the general release and termination of Sobers belie ratification.

**2. <u>The Parties' Intent to Be Bound</u>**

It is also significant, of course, that neither Baron nor even Sobers executed a settlement agreement. That further distinguishes this case from those in which an attorney signed a fully drafted settlement agreement on behalf of a client who later sought to avoid it. *Cf. In re Artha Mgmt., Inc.*, 91 F.3d at 328; *Manning*, 1997 WL 62973, at *1. Here, Delta seeks to enforce an understanding with Baron's counsel that Delta itself described to the Court as a "settlement in principle." ECF No. 30.

The Second Circuit has laid out a four-factor inquiry for courts to use in determining whether parties intended to be bound to an enforceable settlement in the absence of an executed settlement agreement:

> The court is to consider (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Winston v. Mediafare Ent. Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). Courts in this District have sometimes supplemented this test with a fifth factor, "fundamental fairness." *Delyanis v. Dyna-Empire, Inc.*, 465 F. Supp. 2d 170, 175 (E.D.N.Y. 2006); *see Conway,* 236 F.Supp.2d at 252. No single factor controls the analysis; courts use the *Winston*

test to discern whether the parties' objectively intended to manifest an enforceable agreement. *Winston*, 777 F.2d at 80; *Delyanis*, 465 F. Supp. 2d at 175.

Having considered these factors, I conclude that the parties did not share an intent to be bound in the absence of an executed settlement agreement.

The first *Winston* factor asks whether there was an express reservation of the right not to be bound absent a written agreement. *Winston*, 777 F.2d at 80. Although *Winston* used the phrase "express reservation," courts in this district recognize that "[w]here there is no express reservation, the language and conduct of the parties can nevertheless reveal such an intent." *Patel v. Long Island Univ.*, No. 17-CV-2170, 2023 WL 6211769, at *2 (E.D.N.Y. Sept. 25, 2023) (quoting *Sprint Commc'ns Co. L.P. v. Jasco Trading, Inc.*, 5 F. Supp. 3d 323, 332 (E.D.N.Y. 2014). If Sobers had authority to bind Baron, this factor would weigh in favor of shared intent to be bound, since the correspondence between counsel reveals no reservation of the right not to be bound.

The second *Winston* factor asks whether there has been partial performance of the contract. *Winston*, 777 F.2d at 80. Delta asserts that "partial performance leans in favor of enforcing the agreement because the parties exchanged the General Release and the Stipulation of Dismissal." Def. Mem. at 6. But exchanging emails which attached and discussed the document at issue simply does not constitute performance, partial or otherwise. Baron, for his part, points out that he has not received money from Delta, has not signed a release or other settlement document, and has generally done nothing consistent with acceptance or performance of a contract. Pl. Opp'n at 5. What is more, he has dismissed the attorney who made the

agreement and vigorously opposes the instant Motion on a *pro se* basis. This factor thus weighs against a shared intent to be bound.

The third *Winston* factor asks whether all of the terms of the alleged contract have been agreed. *Winston*, 777 F.2d at 80. Delta argues that the parties "reached an agreement on all material terms," listing not only the settlement amount but also "the scope of confidentiality" and "payment terms." Def. Mem. at 8. But the confidentiality and payment terms—which Delta admits were material terms—were never confirmed by Sobers; they appear only in the general release that defense counsel sent to her following the agreement in principle between counsel to settle the case for a sum certain against a general release. *See* ECF Nos. 34-3, 34-4, & 34-5 (proposed general release). Accordingly, this factor also weighs against a shared intent to be bound.

The fourth *Winston* factor asks whether the agreement at issue, in this case a settlement agreement and general release, is the type of contract that is usually committed to writing. *Winston*, 777 F.2d at 80. It is. Out-of-court settlement agreements are normally committed to writing. *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 326 (2d Cir. 1997). This factor too weighs against a shared intent to be bound.

Finally, considerations of fundamental fairness also weigh against enforcement of the asserted settlement agreement. As discussed above, I find that Sobers lacked both actual and apparent authority to bind Baron. To the extent there is doubt about whether Baron has overcome the presumption that an attorney of

record who enters into a settlement agreement had authority to do so, Baron's denial that he gave that authority still weighs in fairness against finding an intent to be bound. In the circumstances presented, I cannot find that it would be fundamentally fair to bind Baron to a broad release drafted by Delta that neither Baron nor his attorney signed and to which Baron insists he never agreed.

## RECOMMENDATION

For the foregoing reasons, I recommend that defendant Delta's Motion to Enforce be denied.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to file objections within the specified time waives the right to appeal the District Court's Order. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO RECOMMENDED.**

/s/ Clay H. Kaminsky
Clay H. Kaminsky
United States Magistrate Judge

Dated: Brooklyn, New York
July 16, 2026